******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NOEL CHANCE *v.* COMMISSIONER OF CORRECTION
## (AC 39952)

DiPentima, C. J., and Alvord and Mihalakos, Js.

*Syllabus*

The petitioner, who had been convicted of, inter alia, kidnapping in the
second degree, sought a writ of habeas corpus, claiming that his trial
counsel had provided ineffective assistance by failing to present accurate
jury instructions to the trial court, in accordance with *State* v. *Salamon*
(287 Conn. 509). The petitioner also claimed that trial counsel provided
ineffective assistance by failing to file a motion to suppress certain
incriminating statements that the petitioner had made to the police at
his home. The habeas court rendered judgment denying the habeas
petition and, thereafter, denied the petition for certification to appeal,
and the petitioner appealed to this court. *Held*:

1. The habeas court did not abuse its discretion in denying the petition for
   certification to appeal; the resolution of the petitioner's underlying claim
   of ineffective assistance of trial counsel involved issues that were not
   debatable among jurists of reason, could not have been resolved by a
   court in a different manner and were not adequate to deserve encourage-
   ment to proceed further.

2. The habeas court properly determined that the petitioner failed to demon-
   strate that his trial counsel rendered ineffective assistance:

   a. The petitioner failed to present a sound basis on which this court
   could conclude that his trial counsel's conduct fell outside the wide range
   of reasonable professional assistance with respect to the kidnapping
   instruction; the habeas court found that trial counsel's decision to accept
   the jury instruction on kidnapping, as given by the court, was the product
   of much thought and discussion among the trial judge, prosecutor and
   trial counsel, and, therefore, was not outside of reasonably acceptable
   professional conduct, and the petitioner offered no expert testimony or
   sound legal theory to support his claim that because trial counsel was
   applying new law, he was uncertain if *Salamon* was going to remain
   good law and should not have allowed the proposed instruction.

   b. The petitioner failed to demonstrate that his trial counsel rendered
   ineffective assistance by failing to file a motion to suppress the incrimi-
   nating statements made by the petitioner to law enforcement prior to
   *Miranda* warnings; the evidence that was adduced at the criminal trial
   and the habeas hearing indicated that there was not a sufficient show
   of police force that would have led a reasonable person, in his home,
   to believe that he was in custody for the purposes of *Miranda*.

Argued April 11—officially released September 4, 2018

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Sferrazza, J.*; judgment
denying the petition; thereafter, the court denied the
petition for certification to appeal, and the petitioner
appealed to this court. *Appeal dismissed.*

*Kinga A. Kostaniak*, assigned counsel, for the appel-
lant (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom,
on the brief, were *David S. Shepack*, state's attorney,
and *Kelly A. Masi*, senior assistant state's attorney, for
the appellee (respondent).

*Opinion*

MIHALAKOS, J. The petitioner, Noel Chance, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal from the denial of his second amended petition, and (2) improperly concluded that he failed to establish that his trial counsel rendered ineffective assistance. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal and, accordingly, dismiss the petitioner's appeal.

The following facts and procedural history are relevant to our disposition of the petitioner's appeal. This court's decision in the petitioner's direct appeal in *State* v. *Chance*, 147 Conn. App. 598, 83 A.3d 703, cert. denied, 311 Conn. 932, 87 A.3d 580 (2014), sets forth the following facts. "From the spring of 2006 through the summer of 2007, the [petitioner] regularly drove around rural areas of Litchfield County in his pickup truck with his black Labrador retrievers and followed female joggers. . . . After receiving complaints, police officers talked to the [petitioner] on three separate occasions and warned him that his conduct was alarming female joggers. On March 30, 2007, after receiving one witness' complaint and determining that the license plate number the witness provided was registered to the [petitioner], Troopers Jason Uliano and Cono D'Elia contacted the [petitioner]. When the troopers informed the [petitioner] that his actions were alarming female joggers, the [petitioner] indicated that he understood and said that 'he would drive somewhere else, he wouldn't do that anymore.' . . .

"On August 11, 2007, the five foot tall, ninety pound, fourteen year old victim in this case was jogging on a secluded road in Litchfield.[1] The [petitioner], who was driving in his truck with his dog, started following the victim. The [petitioner] slowed down and asked her if she wanted a ride. When she refused, the [petitioner] stopped his truck on the side of the road, exited his truck, and chased her. The [petitioner] grabbed her by her ponytail causing her to fall face down on the side of the road. The [petitioner] then engaged in a struggle with the victim that, according to testimony, lasted approximately five minutes. The [petitioner] wrapped his arms around her, touching her breasts, and tried to pick her up. The victim fought back and screamed. The [petitioner] covered her mouth to suppress her screams, told her to shut up, and attempted to pick her up. The victim began 'heaving,' unable to catch her breath. The [petitioner] released the victim, backed away, and asked her if she was okay. The victim responded, 'just leave,' and, 'please leave.' When the [petitioner] turned and

walked toward his truck, the victim ran into a wooded area and hid. The victim attempted to call her mother from her cell phone, but was unable to reach her. She then called 911. State troopers arrived at the scene and aided the victim."[2] (Footnote in original.) Id., 601–604.

The state charged the petitioner with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A); kidnapping in the second degree in violation of General Statutes § 53a-94; attempt to commit kidnapping in the second degree in violation of General Statutes §§ 53a-94 and 53a-49 (a) (2); unlawful restraint in the first degree in violation of General Statutes § 53a-95; and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and (2), respectively. See id., 604. The petitioner was not charged with assaulting the victim.

A four day jury trial began on August 5, 2008. Following the close of evidence, the trial judge met with the petitioner's trial counsel, Walter D. Hussey, and the prosecutor for the purpose of crafting an appropriate kidnapping instruction that incorporated *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008),[3] which had been decided by our Supreme Court one month prior to the petitioner's criminal trial. The petitioner's trial counsel and the prosecutor agreed to a kidnapping instruction comprised of language taken directly from *Salamon*. See id., 546, 548, 550. That instruction provided in relevant part: "If you find that the [petitioner's] restraint of the victim was merely incidental to the [petitioner's] commission of another crime against the victim, that is, assault, then you must find the [petitioner] not guilty of the crime of kidnapping. . . . The determination of whether an assault took place is for you, the jury, to decide. . . . If you find that an assault took place, then you must determine whether the restraint was incidental to that assault. In making that determination, you must consider the various relevant [*Salamon*] factors. . . ."

"The jury found the [petitioner] guilty of kidnapping in the second degree, attempted kidnapping in the second degree, unlawful restraint in the first degree, and risk of injury to a child [in violation of § 53-21 (a) (1)].[4] The trial court merged the [petitioner]'s conviction . . . [of] attempted kidnapping in the second degree, with his conviction . . . [of] kidnapping in the second degree. On October 17, 2008, the court imposed a total effective sentence of twenty years of incarceration, execution suspended after eight and one-half years, followed by five years of probation with special conditions." (Footnote added.) *State* v. *Chance*, supra, 147 Conn. App. 604. This court affirmed in part and reversed in part the judgment of the trial court on direct appeal.[5] See id., 601.

On May 16, 2013, the self-represented petitioner filed a petition for a writ of habeas corpus alleging that

his trial counsel had rendered ineffective assistance in several respects. On August 26, 2016, the petitioner, represented by appointed counsel, filed the operative second amended petition, claiming that trial counsel rendered ineffective assistance in that he (1) "acquiesced to improper jury instructions regarding kidnapping, in accordance with the relatively new law as stated in [*Salamon*]"; (2) failed to file a motion to suppress incriminating statements that the petitioner made to law enforcement prior to receiving a *Miranda*[6] warning; and (3) failed to file a motion to suppress evidence obtained from the seizure of his pickup truck.

The habeas trial was held on September 9, 2016. The habeas court heard testimony from the petitioner, Attorney Hussey and Trooper D'Elia. The petitioner did not present any expert testimony in support of his claims. In a memorandum of decision filed on November 10, 2016, the habeas court denied the petitioner's second amended petition, determining that the petitioner had failed to establish deficient performance or prejudice as to each of his claims. On November 21, 2016, the habeas court denied the petitioner certification to appeal, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal from the denial of his second amended petition for a writ of habeas corpus. We disagree.

As a preliminary matter, we set forth the standard of review that governs our disposition of the petitioner's appeal. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of

the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

As we discuss more fully in part II of this opinion, because the resolution of the petitioner's underlying claim that trial counsel rendered ineffective assistance involves issues that are not debatable among jurists of reason, could not have been resolved by a court in a different manner, and are not adequate to deserve encouragement to proceed further, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal from the denial of the petition for a writ of habeas corpus.

II

We now turn to the petitioner's substantive claims that the habeas court improperly concluded that the petitioner failed to establish that his trial counsel rendered ineffective assistance. The petitioner claims that his trial counsel rendered deficient performance by failing (1) to present accurate jury instructions that were consistent with *Salamon*, and (2) to file a motion to suppress incriminating statements that the petitioner made to law enforcement.[7] The petitioner further claims that he was prejudiced by this deficient performance.[8] We disagree.

We first set forth our standard of review and the legal principles that govern ineffective assistance of counsel claims. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the

Connecticut constitution." (Internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 470–71, 62 A.3d 534, cert. denied, 308 Conn. 939, 66 A.3d 881 (2013).

"As enunciated in *Strickland* v. *Washington*, supra, 466 U.S. 687, this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: [1] a performance prong and [2] a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The [petitioner's] claim will succeed only if both prongs are satisfied. . . . The court, however, can find against a petitioner . . . on either the performance prong or the prejudice prong, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Salmon* v. *Commissioner of Correction*, 178 Conn. App. 695, 703–704, 177 A.3d 566 (2017).

A

With the foregoing legal framework in mind, we address the petitioner's claim that the habeas court improperly concluded that he failed to establish that his trial counsel rendered ineffective assistance by failing to "present accurate jury instruction[s] consistent with . . . [*Salamon*]." At oral argument before this court, the petitioner conceded that he does not actually challenge the language of the jury instruction, stating that it conforms to *Salamon* verbatim. He argues, however, that it was improper for the court to instruct the jury regarding the underlying uncharged assault. The petitioner's basis for this claim is that, because trial counsel was applying new law, he was uncertain if *Salamon* was going to remain good law and should not have allowed the proposed instruction.[9] We disagree.

The habeas court found that the "decision by [trial counsel] to accept the jury instruction on kidnapping, as given by the trial judge, was intentional and the product of much thought and discussion among the trial judge, prosecutor, and [trial counsel]," and, therefore, was not outside of reasonably acceptable professional conduct.[10] The petitioner has offered no expert testimony or sound legal theory to support his claim. On the contrary, our case law firmly establishes that "[s]tare decisis . . . allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of deci-

sionmaking consistency in our legal culture and . . . is an obvious manifestation of the notion that decisionmaking consistency itself has normative value." (Internal quotation marks omitted.) *Spiotti* v. *Wolcott*, 326 Conn. 190, 201, 163 A.3d 46 (2017); see also *State* v. *Salamon*, supra, 287 Conn. 519.

In this case, the petitioner has presented this court with no sound basis to conclude that trial counsel's conduct fell outside the wide range of reasonable professional assistance with respect to the kidnapping instruction. See *Strickland* v. *Washington*, supra, 466 U.S. 689. We conclude, therefore, that the habeas court properly determined that the petitioner failed to demonstrate that trial counsel rendered ineffective assistance with respect to this claim.

B

Last, the petitioner claims that the habeas court improperly concluded that the petitioner failed to establish that his trial counsel rendered ineffective assistance by failing to file a motion to suppress incriminating statements made to law enforcement. Specifically, the petitioner claims that because he was in custody for the purpose of *Miranda* when he made incriminating statements to law enforcement, counsel's failure to pursue a motion to suppress was deficient performance. We disagree.

The following additional facts and procedural history are relevant to our analysis. Prior to the petitioner's criminal trial, trial counsel moved to adopt the suppression motions of the petitioner's previous defense attorney. Trial counsel subsequently withdrew the motion with respect to those statements made by the petitioner during his pretrial suppression hearing. At the criminal trial, law enforcement officers testified that they visited the petitioner's home on August 11, 2007, at approximately 4 p.m., to interview him regarding the complaint. En route to the petitioner's residence they did not use sirens or emergency lights. Trooper Theresa Freeman testified that "[they] parked . . . on the opposite side of the street back from the house. . . . [T]wo troopers [were directed] to go around the back . . . . [They] walked up . . . to the front door [where] there was a female sitting on a chair . . . [they] could see through the window. [They] knocked, [and] she came to the door . . . . [Trooper Freeman asked] 'Is [the petitioner] home?' " The woman then called to the petitioner, who then came to the door. "Trooper Uliano asked him to step outside on the porch . . . which he did. . . . [Then Trooper Freeman] looked right at him [and] said, '[d]id you put your hands on a fifteen year old girl?'. . . [At which point], [h]e looked at [Trooper Freeman], turned his head to the side and said, 'I didn't know she was fifteen,' and dropped his head."

"In order to establish that he was entitled to *Miranda*

warnings [the petitioner] must show that he was in custody when he made the statements and that he made the statements in response to police questioning. . . . In assessing whether a person is in custody for purposes of *Miranda*, the ultimate inquiry is whether a reasonable person in the [petitioner's] position would believe that there was a restraint on [his] freedom of movement of the degree associated with a formal arrest. . . . Any lesser restriction on a person's freedom of action is not significant enough to implicate the core . . . concerns [of the fifth amendment to the United States constitution] that *Miranda* sought to address." (Citation omitted; internal quotation marks omitted.) *State* v. *Edwards*, 325 Conn. 97, 110, 156 A.3d 506 (2017).

With these facts and principles in mind, we review the habeas court's conclusion that trial counsel did not render ineffective assistance with respect to the suppression of the statements made to law enforcement prior to the *Miranda* warnings. The habeas court found that "[trial counsel] well knew that the petitioner . . . had personal interaction and experience with state troopers regarding such inquires in the past that never resulted in a loss of his freedom of movement. Under these circumstances, [trial counsel] correctly assessed that any attempt to suppress admission of these statements would be meritless and futile, and he was within professional competence for declining to make that attempt." The habeas court explained that "[u]nder this scenario . . . a reasonable person would not believe that his freedom of movement was restrained by [the] display of police authority [encountered]." (Internal quotation marks omitted.)

Evidence adduced at the underlying criminal trial and at the habeas hearing indicates there was not a sufficient show of police force that would lead a reasonable person, in his own home, to feel that he was in custody for the purposes of *Miranda*. Accordingly, we conclude that the habeas court properly determined that the petitioner failed to demonstrate that trial counsel rendered deficient performance with respect to this claim.

In light of the foregoing, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] "In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e." *State* v. *Chance*, supra, 147 Conn. App. 603.

[2] After the petitioner's arrest, Troopers "D'Elia and [Steven] Caltica took the [petitioner] to the Troop L state police barracks. . . . [Troopers] D'Elia and Uliano spoke to the [petitioner] at the police barracks and asked him if he would to give a statement. The [petitioner] said, '[W]hatever she said is true,' and then said, 'My life is over.' . . . The troopers asked the [petitioner] what his intentions had been, and he repeated several times, 'I don't know, my life is over.' At one point, the [petitioner] told the troopers, 'I

have a problem.' " *State* v. *Chance*, supra, 147 Conn. App. 611.

[3] In *Salamon*, our Supreme Court "reconsidered and reversed our long-standing jurisprudence holding that the crime of kidnapping encompasses restraints that are necessary or incidental to the commission of a separate underlying crime . . . concluding that [o]ur legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 288 Conn. 418, 429, 953 A.2d 45 (2008).

[4] The jury found the petitioner not guilty of kidnapping in the first degree, and risk of injury to a child, in violation of § 53-21 (a) (2). The court accepted the jury verdict, and a judgment of acquittal was rendered by the court as to these two counts.

[5] This court reversed the judgment and remanded the case to the trial court to vacate the conviction of attempted kidnapping in the second degree on the grounds that it was cumulative and violated constitutional prohibitions against double jeopardy. See *State* v. *Chance*, supra, 147 Conn. App. 619–20; see also *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013). This court affirmed the judgment in all other respects. See *State* v. *Chance*, supra, 622.

[6] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7] The petitioner also claims that the habeas court improperly concluded that he failed to establish that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence resulting from the seizure of the petitioner's truck. This claim has no merit. No tangible evidence was admitted at trial as a result of the seizure. Instead, the only evidence related to the petitioner's truck was testimony regarding the appearance of the truck itself, which served to identify the petitioner as the perpetrator and did not flow from its seizure. The habeas court concluded that, because the seizure of the petitioner's truck was supported by the plain view doctrine, any challenge by trial counsel would have been meritless. The petitioner has presented this court with no basis from which we could conclude that his trial counsel's conduct in failing to move to suppress evidence that was not admitted at trial fell outside the wide range of reasonable professional assistance. Accordingly, the habeas court properly concluded that trial counsel did not render deficient performance in failing to raise a meritless challenge to the seizure of the petitioner's truck.

[8] Because we conclude that the petitioner failed to satisfy his burden of overcoming the strong presumption that his trial counsel provided effective assistance in this matter, we need not reach the petitioner's claim that he was prejudiced by trial counsel's alleged deficient performance. See *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 419, 589 A.2d 1214 (1991) (reviewing court can find against petitioner on either prong of *Strickland*); see also *Martin* v. *Commissioner of Correction*, 141 Conn. App. 99, 102–103, 60 A.3d 997 ("[i]f . . . the petitioner fail[s] to satisfy the performance prong of the *Strickland* standard, that determination is dispositive of the petitioner's habeas claims, and it is unnecessary for the court to reach the prejudice prong"), cert. denied, 308 Conn. 923, 94 A.3d 638 (2013).

[9] At oral argument before this court, the petitioner supported this claim by asserting, "[*Salamon*] itself was then on appeal, and it was not confirmed to be 'proper and accurate' until after these instructions were . . . used in [the petitioner's] case." Contrary to this assertion, however, *Salamon* was binding precedent at the time of the petitioner's criminal trial.

[10] As the habeas court concluded, when trial counsel advocated for the uncharged assault to be included in the instruction, he provided the jury with an avenue for acquittal from the more serious charge of kidnapping in the first degree and, conceivably, benefited the petitioner.