******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOAQUIN SANTIAGO *v.* COMMISSIONER OF CORRECTION
## (AC 44533)

Elgo, Cradle and Alexander, Js.

*Syllabus*

The petitioner, who had been convicted of, inter alia, felony murder, and
sentenced to fifty years' incarceration, sought a writ of habeas corpus,
claiming ineffective assistance of his trial counsel for failure to preserve
his direct appeal. Following the imposition of his sentence, the trial
court clerk handed the petitioner notices of the right to appeal and the
right to sentence review and informed the petitioner that by signing the
documents, he acknowledged receipt of them. The petitioner's trial
counsel, a special public defender, explained to the petitioner what the
documents were and also what had to be done to initiate the appeal,
in particular that in order for the appellate process to start in motion,
an application for waiver of costs and fees and appointment of appellate
counsel had to be filed. After receiving this information, the petitioner
signed the notice forms. Trial counsel then asked the petitioner if he
wanted him to initiate the appeal process or forward the matter to the
Office of the Chief Public Defender so that the appellate unit might
begin an appeal. Angered by the verdict and lengthy sentence imposed,
the petitioner abruptly told his trial counsel that he wanted him to have
no contact with his case any longer. Despite the advice of the trial clerk,
his trial counsel, and the contents of the notice itself, the petitioner
mistakenly believed that signing the notice of right to appeal form was
all that was necessary to begin his appeal. The habeas court, after a
hearing at which the petitioner and his trial counsel testified, dismissed
the petition for a writ of habeas corpus and denied the petition for
certification to appeal. The petitioner did not immediately appeal from
the judgment of the habeas court. Approximately twenty-five years later,
the petitioner filed an application for waiver of fees and for appointment
of counsel to appeal the judgment of the habeas court. Subsequently,
the court granted the petitioner's application for waiver of fees and
referred his petition for appointment of appellate counsel to the Office of
the Chief Public Defender, which appointed counsel. On the petitioner's
appeal to this court, *held*:

1. The petitioner failed to establish that the habeas court abused its discretion
   in denying his petition for certification to appeal, the petitioner having
   failed to establish that the issues raised were debatable among jurists
   of reason, that they reasonably could be resolved by a court differently,
   or that they raised questions deserving further appellate scrutiny.

2. The petitioner could not prevail on his claim that the habeas court's
   conclusion that he was not denied the effective assistance of trial counsel
   rested on clearly erroneous factual findings concerning his trial counsel's
   representations to him during his sentencing proceeding, a careful
   review of the record, including the transcript of the habeas trial, having
   revealed that the court's findings were supported by the evidence in
   the record; the court's factual findings set forth in its memorandum of
   decision were derived directly from the testimony of the petitioner's
   trial counsel at the habeas trial, the court had discretion to credit or
   discredit the witnesses who testified and was the sole arbiter of the
   weight to be given to witness testimony, and, in light of the testimony,
   there was ample evidence in the record to support the court's findings
   that the petitioner's trial counsel advised the petitioner regarding the
   initiation of the appeals process and offered to initiate the appeals
   process on the petitioner's behalf or forward the matter to the Office
   of the Chief Public Defender.

3. The petitioner could not prevail on his claim that the habeas court erred
   in concluding that his trial counsel's representation was not deficient
   and therefore that the petitioner failed to satisfy the performance prong
   of *Strickland* v. *Washington* (466 U.S. 668): it was undisputed that the
   petitioner expressly discharged his trial counsel following the imposition
   of his sentence, and it was reasonable for trial counsel to believe that

initiating an appeal on the petitioner's behalf would contradict the petitioner's explicit instructions and violate his ethical duty to the petitioner, and it was clear that trial counsel was prepared to assist the petitioner in initiating the appeals process but ultimately deferred to the petitioner's instructions to not handle his file any longer.

Argued March 1—officially released June 21, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment dismissing the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Deborah G. Stevenson*, assigned counsel, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, was *Sharmese L. Walcott*, state's attorney, for the appellee (respondent).

*Opinion*

CRADLE, J. The petitioner, Joaquin Santiago, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification and improperly dismissed his petition for a writ of habeas corpus by concluding that he was not denied the effective assistance of his trial counsel, Special Public Defender John Stawicki, with respect to Stawicki's failure to preserve the petitioner's direct appeal. We disagree and, accordingly, dismiss the appeal.

The following facts and procedural history are relevant to our disposition of the petitioner's claim. Following a jury trial, at which the petitioner was represented by Stawicki, the petitioner was convicted of one count of felony murder in violation of General Statutes (Rev. to 1991) § 53a-54c, and four other related charges. On May 21, 1992, the trial court, *Miano*, *J.*, sentenced the petitioner to a total effective sentence of fifty years of incarceration.

"On May 26, 1993, the petitioner filed [a pro se petition for a writ of habeas corpus]" on the ground that he had been denied his constitutional right to the effective assistance of counsel. The petitioner was subsequently appointed counsel and, in his amended petition, claimed that Stawicki rendered deficient performance by failing to preserve his right to appeal from the judgment of conviction after sentencing.

A habeas trial was held on August 24, 1995, whereby the petitioner presented the testimony of two witnesses, himself and Stawicki. On August 28, 1995, the habeas court, *Sferrazza*, *J.*, dismissed the petition for a writ of habeas corpus. In its memorandum of decision, the court found as follows: "Stawicki was appointed to represent the petitioner as a special public defender. Stawicki handled the petitioner's case for over a year, which case culminated in a jury trial at which the petitioner was found guilty of felony murder and related charges. . . . Following imposition of the sentence, the court clerk handed to the petitioner notices of the right to appeal and the right to sentence review. The clerk informed the petitioner that by signing these documents, the petitioner would be acknowledging receipt of them. Before the petitioner signed the documents, Stawicki explained to the petitioner what [the documents] were and also what had to be done to initiate the appeal. In particular, Stawicki explained that, in order for the appellate process to start in motion, an application for waiver of costs and fees and appointment of appellate counsel had to be filed. After receiving this information the petitioner signed the notice forms.

"Stawicki then asked the petitioner if he wanted

Stawicki to initiate the appeal process or forward the matter to the [Office of the Chief Public Defender] so that the appellate unit at that office might begin the appeal. Angered by the verdict and lengthy sentence imposed, the petitioner abruptly told Stawicki that he wanted Stawicki to have no contact with his case any longer. Stawicki respected the petitioner's desire and had no further communication with the petitioner regarding the case. . . . Despite the advice of the clerk, Stawicki, and the contents of the notice itself, the petitioner mistakenly believed that signing the notice of right to appeal form was all that was necessary to begin his appeal."

Applying the test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the court then determined that the petitioner had failed to demonstrate that he had been denied the effective assistance of counsel. Specifically, the court held that Stawicki properly had advised the petitioner regarding the initiation of the appeals process and willingly had offered to assist the petitioner in filing the application for waiver of costs and fees and the appointment of appellate counsel, or in having the appellate unit of the Office of the Chief Public Defender process the petitioner's appeal. The court also determined that the petitioner "out of anger and frustration curtly refused Stawicki's assistance and discharged him" and that it was "the petitioner's errors, not his counsel's, which resulted in the failure to file a timely appeal." The court concluded, accordingly, that Stawicki did not render deficient performance.[1] The petitioner subsequently filed a petition for certification to appeal from the decision of the habeas court, which the habeas court denied.

The petitioner did not immediately appeal from the judgment of the habeas court. Instead, on or about July 21, 2020, the petitioner filed an application for waiver of fees and for appointment of counsel to appeal the judgment of the habeas court. The habeas court subsequently returned the application to the petitioner and informed the petitioner that his file was destroyed on November 16, 2006, pursuant to Practice Book §§ 7-10[2] and 7-11.[3]

On August 24, 2020, the petitioner filed with this court a motion for review of the return of his application for waiver of fees and for appointment of counsel. In his motion, the petitioner requested that this court "remand the fee waiver back to the trial court for approval to appeal the [habeas] court's improper dismissal of [his] habeas petition." The respondent, the Commissioner of Correction, subsequently filed an opposition to the petitioner's motion in which he argued, inter alia, that this court should deny the petitioner's motion because his attempt to appeal the dismissal of his petition for a writ of habeas corpus was untimely. The respondent

also contended that granting the petitioner's requested relief would prejudice the respondent given that approximately twenty-five years had passed "since the matter was heard and the fact that the habeas file was [subsequently] destroyed . . . ."[4]

On October 7, 2020, this court granted the petitioner's motion for review and vacated the habeas court's return of the application for waiver of fees. This court also ordered, sua sponte, that the petitioner file with the habeas court an application for waiver of fees to file an appeal on or before November 18, 2020, and that the petitioner's application be referred to the presiding judge of the habeas court. The habeas court, *Oliver, J.*, subsequently granted the petitioner's application for waiver of fees, but denied the appointment of appellate counsel.

On December 2, 2020, the petitioner filed a motion for extension of time to file a motion to review the habeas court's denial of appellate counsel. On December 8, 2020, this court denied the petitioner's motion without prejudice to the petitioner filing with the trial court a request for a hearing on the denial of his application for appointment of appellate counsel on or before January 8, 2021. The petitioner subsequently filed a request for a hearing on the denial of his application for appointment of appellate counsel.

On January 20, 2021, the trial court, *Oliver J.*, held a hearing on the petitioner's motion for appointment of appellate counsel. In an oral ruling, the court ordered that the petitioner's application be referred to the Office of the Chief Public Defender for an expedited investigation. Appellate counsel subsequently was appointed and the petitioner filed the present appeal as to the dismissal of his 1995 habeas petition and the denial of certification to appeal.

On appeal, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because it improperly concluded that he was not denied the effective assistance of counsel at his criminal trial. More specifically, the petitioner argues that (1) the habeas court's conclusion that Stawicki did not render deficient performance rested on clearly erroneous factual findings, and (2) the court improperly determined that Stawicki did not render deficient performance by failing either to perfect the petitioner's direct appeal or to forward the petitioner's file to the Office of the Chief Public Defender, so that the office could preserve the petitioner's right to appeal and appoint new counsel to represent the petitioner. We disagree.

We first set forth the standard of review relevant to our resolution of this appeal. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's

ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed. . . .

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . .

"To satisfy the performance prong [of the Strickland test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . [A] court must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Citations omitted; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 201 Conn. App. 1, 11–13, 242 A.3d 107, cert. denied, 335 Conn. 983, 242 A.3d 105 (2020).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice . . . are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. . . . Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the [s]ixth [a]mendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance

. . . ." (Citations omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 688–89.

I

The petitioner first claims that the court's conclusion that he was not denied the effective assistance of counsel rested upon clearly erroneous factual findings concerning Stawicki's representations to the petitioner during his sentencing proceeding. Specifically, the petitioner alleges that the court erred in finding that Stawicki "properly advised the petitioner regarding the initiation of the appeals process" and offered "to initiate the appeal process [on the petitioner's behalf] or forward the matter to the [Office of the Chief Public Defender] . . . ." We are not persuaded.

It is well established that "[t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed [on appeal] unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . Thus, the court's factual findings are entitled to great weight. . . . Furthermore, [a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *David P.* v. *Commissioner of Correction*, 167 Conn. App. 455, 470, 143 A.3d 1158, cert. denied, 323 Conn. 921, 150 A.3d 1150 (2016).

Our careful review of the record, including the transcript of the habeas trial, reveals that the court's findings are supported by the evidence in the record. At the habeas trial, Stawicki testified: "I explained to [the petitioner] . . . as I usually do . . . that I can file these papers; that either myself or somebody from the Public Defender's Office—since I was an appointed special public defender in this case—would handle his appeal." When Stawicki was asked specifically whether he would handle the petitioner's appeal, he responded, "I believe the fairer characterization would be that somebody would handle his appeal. *If he would like me to handle it, I would handle it. And my recollection of the reaction was that he was so dissatisfied, he would take care of things himself.*" (Emphasis added.) On cross-examination, Stawicki reiterated, "I explained to [the petitioner] that he had a right of sentence review. I went through what the notice entailed. I also told [the petitioner] that he had a right to appeal. It was an absolute right. I told [the petitioner] that before he could

file the appeal and have representation from the [Office of the Chief Public Defender] that there would have to be a waiver of costs and fees granted. My recollection is that [the petitioner] was not listening extremely closely. [The petitioner] was quite upset about his sentence, and he indicated to me that he didn't want me further handling his case; but I did go through the paperwork."

It is clear that the court's factual findings set forth in its memorandum of decision derive directly from Stawicki's testimony at the habeas trial. Indeed, it is well established that the habeas court has discretion to credit or discredit the witnesses who testify at the habeas trial and is the "sole arbiter of . . . the weight to be given to [witness] testimony." (Internal quotation marks omitted.) *David P.* v. *Commissioner of Correction*, supra, 167 Conn. App. 470; see also *Crespo* v. *Commissioner of Correction*, 292 Conn. 804, 810 n.5, 975 A.2d 42 (2009). In light of Stawicki's testimony, there was ample evidence in the record to support the habeas court's findings that Stawicki advised the petitioner "regarding the initiation of the appeals process" and offered "to initiate the appeal process [on the petitioner's behalf] or forward the matter to the [Office of the Chief Public Defender] . . . ." We conclude, therefore, that the court's factual findings were not clearly erroneous.

II

The petitioner's second claim is that the habeas court erred in concluding that Stawicki's representation of the petitioner was not deficient and, therefore, that the petitioner failed to satisfy the performance prong of *Strickland*. In particular, the petitioner contends that Stawicki's performance fell below an objective standard of reasonableness because Stawicki had an "affirmative duty" to preserve the petitioner's right to appeal or to forward the petitioner's file to the Office of the Chief Public Defender. We are not persuaded.

The United States Supreme Court has established that, although a lawyer who disregards a defendant's specific instructions to file a notice of appeal acts in a professionally unreasonable manner; see *Rodriquez* v. *United States*, 395 U.S. 327, 328–30, 332, 89 S. Ct. 1715, 23 L. Ed. 2d 340 (1969); a defendant who explicitly instructs his attorney not to file an appeal on his behalf cannot later complain that, by following those instructions, his counsel performed deficiently. See *Jones* v. *Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (accused has ultimate authority to make certain fundamental decisions regarding case, including whether to take appeal).

In the present case, it is undisputed that the petitioner expressly discharged Stawicki following the imposition of his sentence. Specifically, the petitioner told Stawicki that "he didn't want [Stawicki] to handle his file any

longer" and that "he wanted [Stawicki] to have nothing more to do with his case. Period." In light of these statements, it was reasonable for Stawicki to believe, based on his experience representing criminal defendants,[5] that initiating an appeal on the petitioner's behalf would contradict the petitioner's explicit instructions and violate his ethical duty to the petitioner.[6]

Nevertheless, the petitioner contends that Stawicki had a professional responsibility, even after being discharged from the representation, to either preserve the petitioner's appellate rights, contact the Office of the Chief Public Defender concerning the petitioner's appellate rights, or better explain the nature of the appeals process. In support of his claim, the petitioner cites several professional rules and guidelines[7] to advance the argument that Stawicki's performance fell below an objective standard of reasonableness.[8] The habeas court found, however, that Stawicki adequately had explained the nature of the appeals forms to the petitioner, instructed the petitioner that the forms would have to be filed in order to perfect his appeal, and informed the petitioner that either he or another attorney from the public defender's office could represent the petitioner on appeal. The court also determined that the petitioner had discharged Stawicki under rule 1.16 (a) (3) of the Rules of Professional Conduct and explicitly directed Stawicki to "play no further role in his case." Accordingly, it is clear that Stawicki was prepared to assist the petitioner initiate the appeals process, but ultimately deferred to the petitioner's instructions to not "handle his file any longer."

Even if we assume that Stawicki violated one of the cited provisions, it is well established that professional rules and guidelines do not establish the constitutional requirements for adequate performance. Rather, "[p]revailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice . . . are guides to determining what is reasonable, *but they are only guides*. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." (Citation omitted; emphasis added.) *Strickland* v. *Washington*, supra, 466 U.S. 688–89.

Considering the circumstances of this case, particularly the court's finding that the petitioner discharged Stawicki and directed him to take no further action on the petitioner's behalf, we cannot conclude that Stawicki's performance was so egregious that he was not "functioning as counsel . . . ." *Ostolaza* v. *Warden*, 26 Conn. App. 758, 761, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992). Indeed, Stawicki explained the appellate process to the petitioner and offered either to represent the petitioner on appeal, or

to forward the petitioner's file to the Office of the Chief Public Defender. Despite these representations, the petitioner discharged Stawicki, instructed Stawicki to have nothing more to do with his case, and told Stawicki that he would personally handle his own appeal. To reiterate, a defendant has the ultimate authority to make certain fundamental decisions in his case, including the decision of whether to take an appeal. See *Jones* v. *Barnes*, supra, 463 U.S. 751. Therefore, it was not unreasonable for Stawicki to believe that the petitioner would represent himself on appeal or find alternative representation. We conclude, accordingly, that the habeas court did not abuse its discretion in determining that Stawicki did not render deficient performance.[9]

For the foregoing reasons, we conclude that the petitioner has failed to establish that the issues raised are debatable among jurists of reason, that they reasonably could be resolved by a court differently, or that they raise questions deserving further appellate scrutiny. Accordingly, the petitioner has failed to establish that the court abused its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Having concluded that Stawicki did not render deficient performance, the court declined to address the prejudice prong of the *Strickland* test. See *Chance* v. *Commissioner of Correction*, 184 Conn. App. 524, 534, 195 A.3d 422 ("[t]he court . . . can find against a petitioner . . . on either the performance prong or the prejudice prong" (internal quotation marks omitted)), cert. denied, 330 Conn. 934, 194 A.3d 1196 (2018).

[2] Practice Book § 7-10 provides: "The files in all civil, family and juvenile actions, including summary process and small claims, which, before a final judgment has been rendered on the issues, have been terminated by the filing of a withdrawal or by a judgment of dismissal or nonsuit when the issues have not been resolved on the merits or upon motion by any party or the court, or in which judgment for money damages only has been rendered and a full satisfaction of such judgment has been filed, may be destroyed upon the expiration of one year after such termination or the rendition of such judgment."

[3] Practice Book § 7-11 provides in relevant part: "(a) With the exception of actions which affect the title to land and actions which have been disposed of pursuant to Section 7-10, the files in civil, family and juvenile actions in which judgment has been rendered may be stripped and destroyed pursuant to the schedule set forth in subsection (d), except that requests relating to discovery, responses and objections thereto may be stripped after the expiration of the appeal period. . . ."

[4] At oral argument before this court, the respondent stipulated that the petitioner's appeal was reviewable and properly before the court for consideration on the merits.

[5] Stawicki testified that he had previously represented clients who instructed Stawicki not to file an appeal on their behalf. Specifically, Stawicki testified that he "had several clients who did not want appeals. I've had others who, although they've been unhappy with the result, have still had me file appeals. I've had some just have me file the waiver of costs and fees, and then I send . . . my file down to New Haven to the appellate office." Accordingly, Stawicki understood the petitioner's statements that he did not want Stawicki to "handle his file any longer" or "have [anything] more to do with his case" as explicit instructions not to file the petitioner's appeal.

[6] We note that the petitioner's instruction that Stawicki "play no further role" in handling his case distinguishes the present situation from our Supreme Court's decision in *Fredericks* v. *Reincke*, 152 Conn. 501, 208 A.2d 756 (1965), on which the petitioner relies. In that case, the special public

defender appointed to represent the plaintiff disregarded the plaintiff's explicit request to pursue an appeal on his behalf. Id., 503–504. Rather, the plaintiff's counsel determined that the plaintiff's appeal was frivolous and withdrew from the representation. Id., 504. Our Supreme Court, relying on *Douglas* v. *California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963), held that "when the special public defender who conducted the plaintiff's defense at his trial came to the conclusion that he could not conscientiously proceed with the appeal which he had taken to preserve the plaintiff's rights, and for which he had obtained an extension of time within which to file the papers essential to the processing of the appeal, and had notified both the plaintiff and the court of his decision, the plaintiff was entitled to have competent counsel appointed to represent him on the appeal." *Fredericks* v. *Reincke*, supra, 505. In the present case, Stawicki was prepared to either represent the petitioner on appeal, or to forward the petitioner's file to the Office of the Chief Public Defender, so that another attorney could represent the petitioner throughout the appeals process. The petitioner, however, discharged Stawicki from the representation and informed Stawicki that "he would take care of things himself." We cannot conclude that Stawicki performed unreasonably by following the petitioner's explicit instruction.

[7] In particular, the petitioner cites to the Connecticut Public Defender Services Commission Guidelines on Indigent Defense §§ 1.3 and 10.2 (guidelines); available at https://portal.ct.gov/-/media/OCPD/Important-Information/PDGuidelinespdf.pdf (last visited June 16, 2022); and rules 1.4 and 1.16 of the Rules of Professional Conduct. The Public Defender Services Commission, however, did not promulgate the guidelines until 1997, two years after the habeas court denied the petitioner's writ of habeas corpus. See Division of Public Defender Services, "30 Years in Review," available at https://portal.ct.gov/OCPD/Org-and-Admin/30-Years-in-Review (last visited June 16, 2022). Accordingly, the court could not have considered the guidelines in determining that Stawicki rendered adequate performance.

At the time of the petitioner's habeas trial, rule 1.4 of the Rules of Professional Conduct provided in relevant part: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information . . . [and] shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rules of Professional Conduct (1978-97) 1.4.

At the time of petitioner's habeas trial, rule 1.16 of the Rules of Professional Conduct provided in relevant part: "(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . .

(3) The lawyer is discharged.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(1) The client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2) The client has used the lawyer's services to perpetrate a crime or fraud;

(3) The client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(4) The client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) The representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) Other good cause for withdrawal exists.

(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law." Rules of Professional Conduct (1978-97) 1.16.

[8] In his brief to this court, the petitioner also cites to the United States Supreme Court decisions in *Roe* v. *Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), and *Garza* v. *Idaho*, U.S. , 139 S. Ct. 738, 203 L. Ed. 2d 77 (2019), to argue that Stawicki's failure to take reasonable steps to preserve his right to appeal (1) falls below an objective standard of reasonableness as measured by prevailing professional norms and (2)

entitles him to a "presumption of prejudice." These decisions, however, were released several years after the habeas court issued its memorandum of decision denying the petitioner's writ of habeas corpus in 1995. The petitioner has not raised the claim, pursuant to the framework set forth in *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), and adopted by our courts in *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 113, 111 A.3d 829 (2015) ("[w]e therefore adopt the framework established in *Teague*, with the caveat that, while federal decisions applying *Teague* may be instructive, this court will not be bound by those decisions in any particular case, but will conduct an independent analysis and application of *Teague*"), that the decisions in *Flores-Ortega* and *Garza* apply retroactively to his petition for a writ of habeas corpus. Accordingly, we decline to review such a claim. See *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 659 n.9, 224 A.3d 147 (2020).

[9] Because we conclude that the court properly found that the petitioner failed to demonstrate that Stawicki's performance fell below an objectively reasonable standard, we do not address the prejudice prong of the *Strickland* test. See *Anderson* v. *Commissioner of Correction*, supra, 201 Conn. App. 13 ("a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition" (internal quotation marks omitted)).