JOSE CRESPO *v.* COMMISSIONER OF CORRECTION
(SC 18241)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued February 10—officially released August 4, 2009

*Joseph Visone*, special public defender, for the appellant (petitioner).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Maureen M. Keegan*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

VERTEFEUILLE, J. The petitioner, Jose Crespo, appeals[1] from the denial of his petition for certification

---

[1] The petitioner appealed from the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

to appeal[2] from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because it is debatable among jurists of reason whether an actual conflict of interest existed between the petitioner and his criminal trial counsel that prevented the petitioner from receiving effective assistance of counsel at trial. We disagree and conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal from the dismissal of his petition for a writ of habeas corpus. Accordingly, we dismiss the petitioner's appeal.[3]

The following facts and procedural history underlying the petitioner's present appeal were set forth by this court in the petitioner's criminal appeal, wherein we affirmed his conviction of murder. "The [petitioner] and the victim had been involved in a relationship for three years, beginning when the victim was sixteen years old and the [petitioner] was twenty-three years old. Throughout the course of their relationship, the [petitioner] and the victim regularly had engaged in physically and verbally abusive behavior. On May 24, 1994, the [petitioner] went to the home of the victim in Waterbury for a prearranged meeting. While there, the [peti-

---

[2] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

[3] The petitioner also claims on the merits that the habeas court improperly dismissed his petition for a writ of habeas corpus because that court incorrectly determined that there was no actual conflict of interest. Because we conclude that the habeas court did not improperly deny the petitioner's petition for certification to appeal from the dismissal of his petition for a writ of habeas corpus, we do not reach the petitioner's claim on the merits.

tioner] and the victim engaged in a violent argument that led to the [petitioner's] strangulation of the victim. The [petitioner] subsequently took steps to conceal his crime." *State* v. *Crespo*, 246 Conn. 665, 667, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

"On the day after he killed the victim, the [petitioner] met his brother-in-law, Jose Pizarro. At that time, the [petitioner] informed Pizarro that he thought he had killed the victim. Subsequently, [the petitioner] also told the same thing to his sister, Eva Pizarro. At the recommendation of the Pizarros, the [petitioner] agreed to turn himself in to the police. The Pizarros then accompanied the [petitioner] to [attorney Mark] Kostecki's office for that purpose. After consultation with the [petitioner] in the presence of the Pizarros, during which the [petitioner] informed Kostecki that he had killed the victim and where the body was located, Kostecki contacted John Maia, an inspector in the office of the state's attorney. Kostecki advised Maia of what he had been told concerning the circumstances of the victim's death and the location of the body. Kostecki drafted a written consent to search the storage bin where the body was hidden, which the [petitioner] signed. Kostecki turned the consent form over to the police and accompanied them in their search of the storage bin. The police opened the bin with a key provided to them by Kostecki. Kostecki informed the police that the individual from whom he had obtained the key was in his office. At that time, he did not refer to the [petitioner] by name.

"Inside the bin, the police observed a bag that was large enough to contain a body. Rather than continue the search, the police sought to secure a search warrant. The affidavit for the warrant included the information obtained by the police from Kostecki, statements of Jose Pizarro to the police regarding the [petitioner's] confession and the location of the body, as well as certain aspects of the independent investigation of the

police, including their observation of the size of the bag [and] their discovery of the fact that the [petitioner] had leased the bin on the prior day." Id., 682–83.

The petitioner subsequently was charged by information with murder in violation of General Statutes § 53a-54a (a). Id., 668. After the trial court found the petitioner competent to stand trial and that there was probable cause for the murder charge, the petitioner waived his right to a jury trial and was tried by a three judge panel. Id. At trial, Kostecki, as counsel for the petitioner, submitted a stipulation of facts to the court relating to Kostecki's participation in the initial investigation. The stipulation was admitted into evidence without objection.[4] Id., 683. Moreover, at trial, the petitioner did not

---

[4] The stipulation of facts provided as follows:

"STIPULATION

"1. On May 25, 1994, at approximately 2:45 p.m., Attorney Mark Kostecki, 63 Central Avenue, Waterbury, Connecticut, contacted by telephone Inspector John Maia of the Waterbury State's Attorney's Office.

"2. Attorney Kostecki informed Maia that he received information that there was a body located in a storage bin at Storage USA in Waterbury, Connecticut. He also informed Maia that the keys to the bin were in his possession.

"3. Upon Maia's arrival at 63 Central Avenue, Waterbury, Connecticut, Attorney Kostecki further informed Maia that the body was in storage bin #719 at Storage USA in Waterbury, Connecticut.

"4. Prior to leaving 63 Central Avenue, Waterbury, Connecticut, Attorney Kostecki had prepared a written consent to search storage bin #719 at Storage USA. Said consent form was signed by Jose Crespo and turned over to Waterbury police detective Mark Deal.

"5. At Storage USA, 770 West Main Street, Waterbury, Connecticut, Attorney Kostecki handed two keys to Waterbury police officer Michael Silva.

"6. Upon Maia's question to Attorney Kostecki concerning from whom he received the keys, Attorney Kostecki stated that the person who turned over the keys to him was at his law office on 63 Central Avenue, Waterbury, Connecticut.

FOR THE STATE
OF CONNECTICUT

/s/ Maureen M. Keegan

Maureen M. Keegan
Assistant State's Attorney
Judicial District of Waterbury"

FOR THE DEFENDANT
JOSE CRESPO

/s/ Mark Kostecki

Mark Kostecki

deny that he caused the victim's death. Rather, he consistently claimed that he did not intend to kill the victim, and that he had been extremely emotionally disturbed when he killed her. Id., 667. After the completion of the trial, the petitioner was convicted of murder and sentenced to a term of imprisonment of sixty years. Id., 668. He directly appealed from the judgment of the trial court to this court pursuant to General Statutes § 51-199 (b). Id.

On appeal to this court from his conviction, the petitioner claimed that he was entitled to a new trial because Kostecki, in representing him and admitting the stipulation of facts, had an actual conflict of interest. Id., 682. This court ultimately disagreed with the petitioner's claim and affirmed the judgment of conviction. Id., 668. We concluded that the record was unclear with regard to the petitioner's claim that Kostecki's decision to admit the stipulation of facts concerning his contact with the police was one adverse to the petitioner's interest. Id., 690. "Contrary to the [petitioner's] assertion, we cannot conclude from this record that Kostecki's decision to admit the stipulation of fact[s] concerning his contact with the police was the product of personal interests that were inconsistent, diverse or otherwise discordant with the [petitioner's] interest. . . . The decision to admit the stipulation of facts may have been a reasonable trial strategy, properly discussed with and agreed to by the [petitioner], to admit uncontested and readily ascertainable facts. On the other hand, it may have been the equivalent of adverse attorney testimony prompted by Kostecki's desire to remain as the [petitioner's] counsel, inimical to the [petitioner's] best interests." (Citation omitted; internal quotation marks omitted.) Id. In conclusion, this court reasoned that the petitioner's claim should be brought in a petition for writ of habeas corpus. Id., 687–88.

The petitioner thereafter filed a petition for a writ of habeas corpus based on the existence of an actual conflict of interest between Kostecki's representation of the petitioner and the petitioner's interests. After a full trial, at which both the petitioner and Kostecki testified, the habeas court concluded that the petitioner failed to show that any actual conflict of interest existed, and, further, that if any such conflict of interest existed, Kostecki's performance was not adversely affected. The habeas court disbelieved the petitioner's testimony and credited Kostecki's testimony,[5] and concluded that Kostecki's admission of the stipulation of facts into the record at the petitioner's criminal trial was a reasonable trial strategy. Accordingly, the habeas court dismissed the petitioner's petition for a writ of habeas corpus.

The petitioner subsequently filed a petition for certification to appeal from the dismissal of his petition for a writ of habeas corpus pursuant to General Statutes § 52-470 (b).[6] The habeas court denied the petition for certification. This appeal followed.

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal from the dismissal of his petition for a writ of habeas corpus. Specifically, the petitioner asserts that it is debatable among jurists of reason whether an actual conflict of interest prevented Kostecki from providing effective assistance of counsel at the petitioner's criminal trial. The petitioner contends that the admission of the stipulation of facts by Kostecki during his criminal

[5] It is within the habeas court's discretion to credit or discredit the witnesses who testify at the habeas trial. See, e.g., *Batts* v. *Commissioner of Correction*, 85 Conn. App. 723, 728, 858 A.2d 856 ("[t]he court, in its role as finder of fact, [is] the sole arbiter of the credibility of the witnesses and the weight to afford their testimony"), cert. denied, 272 Conn. 907, 863 A.2d 697 (2004).

[6] See footnote 2 of this opinion for the text of § 52-470 (b).

trial was the equivalent of adverse testimony by Kostecki and thus constituted an actual conflict of interest. The respondent, the commissioner of correction, claims that the admission of the stipulation of facts did not constitute adverse testimony and was, instead, a reasonable trial strategy. Accordingly, the respondent asserts that there was no actual conflict of interest and that the habeas court properly denied the petitioner's petition for certification to appeal. We agree with the respondent.

We begin with the well established standard of review. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court *could* resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . Id., 616, quoting *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). The required determination may be made on the basis of the record before the habeas court and applicable legal principles. See *Simms* v. *Warden*, supra, 617. If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. Id., 612." (Emphasis in original; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 564, 941 A.2d 248 (2008); see also *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448–49, 936 A.2d 611 (2007); *Coleman* v. *Commissioner of Correction*, 274 Conn. 422, 423, 426, 876 A.2d 533 (2005); *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 147, 662 A.2d 718 (1995).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria identified in [*Lozada* v. *Deeds*, supra, 498 U.S. 432] and adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed [and the appeal dismissed]." *Taylor* v. *Commissioner of Correction*, supra, 284 Conn. 449.

Before addressing the merits of the petitioner's contention that the habeas court improperly denied his petition for certification, we summarize the law governing the petitioner's claim. This court previously has explained, in the petitioner's underlying criminal appeal, the circumstances under which the admission of a stipulation relating facts in lieu of a defense attorney's testimony may constitute a conflict of interest. "The admission of a stipulation relating facts in lieu of a defense attorney's testimony may, in some cases, constitute a conflict of interest. If the stipulation is the equivalent of an attorney testifying against his client, it is, ipso facto, an actual conflict of interest. See Rules of Professional Conduct 3.7. It does not follow, however, that every stipulation regarding an attorney's role in the representation of his client prior to trial is the equivalent of adverse testimony by the attorney. The use of a stipulation rather than an attorney's testimony has been accepted as a legitimate trial strategy when the information in the stipulation otherwise could have been presented by the prosecution, but the use of the stipulation was strategically preferable to the defendant

and the state. For example, in *People* v. *Beals*, 162 Ill. 2d 497, 504–505, 643 N.E.2d 789 (1994), the defendant's attorney entered a stipulation relating the facts of an interview he had conducted with two witnesses regarding their testimony. The prosecution could have called the defendant's sister, who was present during the interviews, to testify to the facts contained in the stipulation. Id., 505. The court [in *Beals*] concluded that the use of the stipulation rather than his sister's testimony was in the best interest of the defendant, and, therefore, was not ineffective assistance of counsel. Id. There are many factors that must be evaluated in a determination of whether the use of a stipulation is a valid trial strategy or the equivalent of adverse attorney testimony. Such factors include whether the stipulation comports with the defendant's overall trial strategy, whether the stipulation is reasonable in light of the state's case, whether the state could have proven the facts in the absence of the stipulation, whether the attorney discussed the use of the stipulation with the defendant as a trial strategy, and whether the defendant agreed with that strategy. Although that list is not exhaustive, it provides a suitable framework from which to evaluate the legitimacy of Kostecki's decision to enter the stipulation into evidence . . . ." *State* v. *Crespo*, supra, 246 Conn. 691–92.

We now turn to the question of whether the habeas court abused its discretion in denying the petition for certification to appeal. At the habeas trial, the petitioner testified to the following. After he had murdered his girlfriend and taken steps to conceal the crime, he had decided to seek legal assistance from Kostecki at the advice of his sister and brother-in-law because he wanted to turn himself in to the police. Kostecki, after hearing the petitioner's desire to turn himself in, agreed to help him. On the same day that he first visited Kostecki, the petitioner gave Kostecki the key to the storage bin in which he had hidden the victim's body and volun-

tarily signed a consent form allowing the police to search the storage bin. The petitioner understood that without the key and the consent form, Kostecki would be unable to assist him in turning himself in to the police; accordingly, he provided both.

The petitioner further testified that before the trial, Kostecki had discussed with him the fact that he would pursue a mental state, or intent, based defense. He also testified, however, that Kostecki did not discuss case strategy with him or mention the defense of extreme emotional disturbance. Additionally, the petitioner testified that he was never informed about the existence or admission of the stipulation of facts during his trial. The petitioner testified that he could not remember signing the stipulation, and that he was sure that Kostecki had never discussed any possible conflict of interest with him.

During her cross-examination of the petitioner during the habeas trial, however, counsel for the respondent offered the petitioner a copy of his testimony during his criminal trial. That transcript showed that at the time the stipulation of facts was admitted into evidence, the petitioner had been canvassed and had acknowledged the existence of the stipulation, his communication with Kostecki about the stipulation, and his understanding of the stipulation.

Kostecki was the only other witness to testify at the habeas trial. He testified to the following. In May, 1994, the petitioner, with his sister and brother-in-law, came to Kostecki's office, where the petitioner confessed to murdering the victim and professed his desire to turn himself in to the police. Kostecki retrieved from the petitioner the key to the storage bin where the petitioner admitted to hiding the victim's body, and called the office of the state's attorney to seek help in moving forward. Kostecki was referred by an assistant state's

attorney to state inspector Maia. Kostecki did not reveal the petitioner's identity to either the assistant state's attorney or Maia at that time. Kostecki then prepared a consent form allowing the police to search the petitioner's storage bin, which the petitioner signed. Kostecki, Maia and the police, with the aid of a search warrant, searched the storage bin and discovered the victim's body.

Kostecki further testified that he and the prosecutor in the criminal trial had entered into a stipulation of facts that was subsequently admitted into evidence. He fully explained the stipulation to the petitioner on three separate occasions: at the petitioner's arraignment, at the scheduling hearing for the probable cause hearing, and at the probable cause hearing itself. The facts set forth in the stipulation could have been attested to by any number of witnesses, including Maia and the police officers present during the search of the storage bin and at the time of the petitioner's arrest, who had firsthand knowledge of those facts. Because the petitioner admitted to committing the murder and wished to turn himself in to the police, Kostecki never considered the case to be a matter of "who-done-it," but instead pursued a defense that explored the petitioner's intent at the time of the crime.[7] Kostecki therefore discussed with the petitioner the possibility of presenting a defense of extreme emotional disturbance. The stipulation entered into by Kostecki and the prosecutor, in the words of this court in the petitioner's criminal appeal, "had little, if anything, to do with the defendant's mental state." *State* v. *Crespo*, supra, 246 Conn. 693.

On the basis of this testimony,[8] the habeas court reasonably concluded that the petitioner failed to prove

[7] It is axiomatic that decisions of trial strategy and tactics rest with the attorney. See, e.g., *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 581, 877 A.2d 761 (2005); *State* v. *Davis*, 199 Conn. 88, 95, 506 A.2d 86 (1986).

[8] See footnote 5 of this opinion.

that Kostecki had represented any interest adverse to the petitioner or that the admission of the stipulation of facts had constituted adverse testimony by Kostecki that amounted to a conflict of interest. The habeas court also reasonably concluded that the admission of the stipulation of facts was a reasonable trial strategy. As this court concluded in the petitioner's criminal appeal, we also conclude in the present case, after examination of the record before the habeas court, that "the state could have proved every relevant fact related in the stipulation. It was . . . reasonable to believe, in the face of the [petitioner's] several confessions as well as other compelling circumstantial evidence, that the state would have had little trouble proving, independent of the stipulation, the commission of the homicide. The [petitioner's] decision to rely exclusively on a mental state defense appears to have been the best, if not the only, viable trial strategy." Id., 692–93.

Because the record amply supports the findings and conclusions of the habeas court—indeed, the record lacks any persuasive evidence that an actual conflict of interest existed or that Kostecki represented any interest adverse to those of the petitioner—we are unable to conclude that the petitioner has satisfied any one of the *Lozada* criteria, including the first criterion upon which he relies, namely, that the issue raised is debatable among jurists of reason. See *Lozada* v. *Deeds*, supra, 498 U.S. 431–32; *Simms* v. *Warden*, supra, 230 Conn. 616. We therefore conclude that the habeas court did not abuse its discretion in denying the petitioner's request for certification to appeal from the judgment of the habeas court dismissing his petition.

The appeal is dismissed.

In this opinion the other justices concurred.