******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## LONNIE OWEN *v.* COMMISSIONER
## OF CORRECTION
### (AC 46954)

Bright, C. J., and Moll and Suarez, Js.*

*Syllabus*

The petitioner, who previously had been convicted of murder, appealed after the habeas court denied his petition for certification to appeal from the court's judgment denying his third petition for a writ of habeas corpus. He claimed, inter alia, that the court abused its discretion in requiring that his withdrawal prior to trial of certain counts and claims in his habeas petition be with prejudice. *Held*:

The habeas court did not abuse its discretion in denying the petitioner certification to appeal, as he failed to show that his claims involved issues that were debatable among jurists of reason, that a court could resolve them in a different manner or that they were adequate to deserve encouragement to proceed further.

The habeas court's requirement that any withdrawal of counts or claims in the petitioner's habeas petition would be with prejudice did not constitute an abuse of the court's discretion, as the petitioner's conviction was nearly twenty years old, he had withdrawn, on the eve of trial, two previous habeas petitions he had filed, and his third habeas petition was seven years old.

The habeas court properly determined that the petitioner failed to demonstrate that his counsel at his criminal trial rendered ineffective assistance by failing to properly investigate and prepare an alibi defense, as the petitioner failed to call alibi witnesses to testify at the habeas trial and the court found that the petitioner had "zero credibility" regarding his claims that he never discussed an alibi defense with counsel and had told counsel that he did not want to testify at the trial.

Argued December 10, 2024—officially released August 19, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the petition was withdrawn in part; thereafter, the case was tried to the court, *Newson, J.*; judgment denying the petition; subsequently, the court

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Chad L. Edgar*, assigned counsel, for the appellant (petitioner).

*Timothy F. Costello*, supervisory assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Jonathan Formichella*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

SUAREZ, J. The petitioner, Lonnie Owen, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his third amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal, (2) abused its discretion when it required that the withdrawal of certain counts of his petition be with prejudice, and (3) improperly concluded that he had failed to prove ineffective assistance of counsel. We dismiss the appeal.

The following undisputed facts and procedural history are relevant to the resolution of the present appeal. "On January 1, 2003, at approximately 7:40 a.m., the body of Jikki Bruce was found on Center Street in Bridgeport. The cause of Bruce's death was a single gunshot wound to his abdomen. After an investigation, the police determined that the [petitioner] had shot Bruce on the fifth floor of a building in a housing project approximately eight hours before Bruce's body was found. Bruce fled from that building and then collapsed and died one block away on Center Street. The state charged the [petitioner] with murder [in violation of General Statutes § 53a-54a (a)], but he claimed that he had been at a New Haven nightclub at the time that

Bruce had been shot." *State* v. *Owen*, 101 Conn. App. 40, 41, 919 A.2d 1049, cert. denied, 283 Conn. 902, 926 A.2d 671 (2007).

The petitioner was initially represented by Attorney Joseph Mirsky. On February 9, 2004, the court, *Hauser, J.*, declared a mistrial after a jury was unable to reach a unanimous verdict during the petitioner's first criminal trial (first trial). Shortly thereafter, Mirsky began to experience health issues, and, on March 10, 2004, Attorney Wayne R. Keeney began representing the petitioner. On October 5, 2004, following a second jury trial (second trial), the petitioner was found guilty of murder in violation of § 53a-54a. On November 19, 2004, the court, *Harper, J.*, sentenced the petitioner to sixty years of incarceration. This court affirmed the judgment of conviction. See id., 44.

The petitioner commenced the present action in 2016, his third habeas action. The operative third amended habeas corpus petition (operative petition) alleged claims of actual innocence in count one, ineffective assistance by the petitioner's second trial counsel in count two, a due process violation for the state's alleged failure to disclose exculpatory evidence in count three, and a due process violation for the prosecutor's knowing presentation of false testimony in count four.

Prior to the commencement of trial on May 25, 2023, the petitioner's habeas counsel informed the court, *Newson, J.*, that he was withdrawing "certain claims . . . ." In response, the court indicated to counsel that, "[t]o the extent [the petitioner] withdraws anything today, I am going to consider that withdrawal, whether it is before or after evidence, to be with prejudice because this [conviction] is [nearly twenty] years old. He's come here. He's filed two prior [habeas petitions]. He's had DNA testing done or requested DNA on certain items. . . .

"But, at this point, in fairness to everybody, because habeas cases have to be resolved at some point, and this [conviction] is [nearly twenty] years old, and it hasn't been his first trial yet, to the extent that there would be any claim that matters that are withdrawn should be able to slide out from under ineffective assistance and be brought under some other guise, I would just make a finding that it will be with prejudice. He has a right to object. He has the right to challenge it. He just needs to understand my order is, the withdrawals are going to enter with prejudice."

After the petitioner's counsel objected, arguing that the petitioner's prior withdrawals had been made in good faith based on agreements with counsel for the respondent, the Commissioner of Correction, the court responded: "Listen, counsel, I will say this. I don't know why, I don't know what the reasons were . . . and there are many reasons why people withdraw [habeas petitions]. . . . [T]here is the strategic withdrawal; I don't like what my lawyer is doing, I want the lawyer to bring other claims that the other lawyer doesn't agree with, so I'm just going to withdraw. And then there's the, I realize I really don't have a case, so I'm going to go back to the drawing board, and I'm going to try to put something else together. There's . . . legitimate reasons that you make every effort to find a critical witness, and he or she goes ghost on you and you can't find them. I don't know. I just know this [conviction] is [nearly twenty] years old. This amended petition is a year old, and this file dates back to 2016.

"So, at this point, [nearly twenty] years after his conviction, for whatever the reasons are, he has a right to go forward. That is why we are here. We are finally going to try his habeas matters. But, other than things that clearly would support an actual innocence claim, in fairness to everybody that . . . needs finality, [the petitioner], police officers, the victims and the state—

that this habeas case moves along in the process, I am not going to allow for the third time, potentially, him to withdraw claims only to say I get a freebie, I get to relitigate those claims over again if I don't like the results of this habeas. So, your objection is noted. . . . If . . . you withdraw things here, I'm going to enter [the withdrawals] with prejudice." Thereafter, the court canvassed the petitioner as to his understanding of the implications of withdrawing claims and accepted the withdrawal of all counts except portions of count two of the operative petition.[1] The withdrawals of the petitioner's due process claims and certain allegations that were part of his ineffective assistance of counsel claim were deemed by the court to be with prejudice.[2]

The habeas trial then proceeded solely on the remaining allegations of the petitioner's ineffective assistance of counsel claim that had not been withdrawn. The court heard the testimony of Keeney; the petitioner; James DePietro and Joseph Adiletta, detectives associated with the police investigation; Brent E. Turvey, PhD, a crime scene reconstruction expert; and Brian Cutler, PhD, an expert in coerced compliance. The petitioner also introduced into evidence transcripts of the second trial.

Keeney testified that he only vaguely remembered having represented the petitioner. Nevertheless, Keeney testified that he would have reviewed all materials provided through discovery, all materials in the petitioner's file and all of the transcripts from the petitioner's first trial. According to Keeney, the police investigation had

---

[1] In count two, the petitioner alleged that Keeney had rendered ineffective assistance by, inter alia, failing "to adequately investigate, prepare, and present the testimony of the petitioner" and by failing "to adequately present an alibi defense . . . ."

[2] The habeas court made clear that the withdrawal of the petitioner's actual innocence claim was without prejudice.

indicated a "pretty strong identification" of the petitioner as the perpetrator. Keeney further testified that the petitioner had claimed to have been at a New Haven nightclub at the time of the shooting and, although Keeney did not recall whether he had visited the nightclub, he testified that this seemed to be something he would do. Keeney stated that it was his general practice to prepare his alibi witnesses for cross-examination; however, he could not recall if he had done so in the present case and could not recall the names of the alibi witnesses or if they had testified at trial. Keeney did recall, however, that, when the petitioner testified at trial, his description of the nightclub was different from the actual configuration of the nightclub. Last, Keeney testified that it was his general practice to advise clients against testifying, but he could not recall what advice he had given the petitioner or whether the petitioner had wanted to testify.

The petitioner testified that he and Keeney had met only twice prior to the commencement of the second criminal trial. He testified that he had met Keeney when Keeney was first appointed to represent him and then again at the commencement of jury selection. The petitioner further testified that he had never informed Keeney of an alibi and had told Keeney that he did not want to testify. According to the petitioner, Keeney had told him that it was not the petitioner's decision as to whether he would testify. Moreover, the petitioner testified that Keeney had never discussed with him the risks of testifying at the second trial or prepared him prior to calling him as a witness. Last, the petitioner testified that he had not discussed with Keeney the configuration of the New Haven nightclub.

On August 4, 2023, the court issued a memorandum of decision in which it found that "[t]he petitioner [had] filed two prior habeas corpus petitions challenging his

conviction. The first on August 8, 2007 . . . was with-
drawn prior to trial on June 26, 2013. The second . . .
was filed on March 27, 2014, and was also withdrawn
prior to trial on April 10, 2015. Just over eighteen months
later, the petitioner commenced the present action on
November 16, 2016.''

With respect to the withdrawn counts, the court
noted that ''the petitioner withdrew multiple counts and
claims immediately prior to the opening of trial. Given
the age of the petitioner's convictions, the age of this
case, and the fact that the petitioner has filed two prior
habeas petitions and withdrawn those entirely on the
proverbial eve of trial . . . he was notified that . . .
any withdrawals in the present case would be entered
'with prejudice,' with the exception of the petitioner's
claim for actual innocence.''

Moreover, the habeas court noted that, ''[a]fter a thor-
ough canvass, the petitioner withdrew subparagraphs
52.3 (failing to properly cross-examine Jimmie Epps and
Annette Adorno), paragraph 52.9 (failure to investigate,
prepare, and present the testimony of sixteen named
witnesses), paragraph 52.11 (failure to get the statement
of a Juan Gomez into evidence), and [paragraph] 52.12
(failure to adequately investigate the evidence found
outside of building 3) of claim two alleging ineffective
assistance against trial counsel. He also withdrew claim
three (failure to disclose exculpatory evidence) and
claim four (presentation of false testimony). All were
entered with prejudice.'' (Internal quotation marks
omitted.)

With respect to the remaining allegations of ineffec-
tive assistance of counsel that were tried, the court
noted that the petitioner ''alleges that . . . Keeney
failed to adequately present the petitioner's alibi
defense supported by testimony from the petitioner,
Jonathan Tucker, and Clarissa Austin.'' The court found

that, "while the petitioner testified about how he did not wish to testify [in the second criminal trial], he failed to add any new or substantially different evidence from the transcript of the second trial. . . . Tucker and . . . Austin did not testify, so the claim fails with respect to them as a matter of law."

The court denied the habeas petition. Thereafter, the petitioner filed a timely petition for certification to appeal, which the habeas court denied. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the petitioner's claim that the habeas court abused its discretion in denying his petition for certification to appeal. We conclude that the court's ruling did not constitute an abuse of its discretion.

General Statutes § 52-470 (g) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

"Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [a] court could resolve the issues [in a different manner] . . . or . . .

the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . *Crespo* v. *Commissioner of Correction*, 292 Conn. 804, 811, 975 A.2d 42 (2009); see also *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994) (adopting factors identified by United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as appropriate standard for determining whether habeas court abused its discretion in denying certification to appeal).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification. . . . *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 573, 211 A.3d 72, cert. denied, 333 Conn. 902, 215 A.3d 160 (2019)." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 205 Conn. App. 46, 78–79, 256 A.3d 684, cert. denied, 339 Conn. 909, 261 A.3d 744 (2021).

For the reasons subsequently set forth in this opinion, we conclude that the petitioner has not demonstrated that the habeas court abused its discretion in denying his petition for certification to appeal because he has not shown that the issues he raises are debatable among

jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal and, therefore, dismiss the appeal.

## II

The petitioner next claims that the habeas court abused its discretion when it required that his withdrawal of certain counts and claims in his operative petition be with prejudice. The petitioner argues that, in the absence of " 'procedural chicanery,' " the court's requirement was an abuse of its discretion. The respondent argues that the petitioner has not shown that the court abused its discretion. We agree with the respondent.

We begin by setting forth our standard of review and relevant legal principles. "The decision by a habeas court to condition a withdrawal of a habeas petition on that withdrawal being with prejudice is, when authorized, a decision left to that court's discretion." (Internal quotation marks omitted.) *Marra* v. *Commissioner of Correction*, 174 Conn. App. 440, 455, 166 A.3d 678, cert. denied, 327 Conn. 955, 171 A.3d 456 (2017). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not impede or defeat the ends of substantial justice. . . . Inherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court . . . . Under that standard, we must make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Our] review of

such rulings is limited to questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . .

"General Statutes § 52-80 provides in relevant part: The plaintiff may withdraw any action . . . before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action . . . only by leave of court for cause shown. The term with prejudice means [w]ith loss of all rights; in a way that finally disposes of a party's claim and bars any future action on that claim. . . . The disposition of withdrawal with prejudice exists within Connecticut jurisprudence. . . . Indeed, the disposition of withdrawal with prejudice is a logically compelling disposition in some circumstances. A plaintiff is generally empowered, though not without limitation, to withdraw a complaint before commencement of a hearing on the merits. . . . A plaintiff is not entitled to withdraw a complaint without consequence at such hearing." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 187 Conn. App. 857, 863–64, 204 A.3d 55, cert. denied, 331 Conn. 912, 203 A.3d 1247 (2019).

"Moreover, [h]abeas courts are given wide latitude in fashioning remedies. . . . [H]abeas corpus has traditionally been regarded as governed by equitable principles. . . . Among them is the principle that a [petitioner's] conduct in relation to the matter at hand may disentitle him to the relief he seeks. . . . A [petitioner] should never be permitted to abuse [his] right to voluntarily withdraw an action. Such abuse may be found if, in executing [his] right of withdrawal, the [petitioner] unduly prejudices the right of an opposing party or the withdrawal interferes with the court's ability to control its docket or enforce its rulings. . . . Significantly . . .

[this] court . . . [has] recognized that in certain circumstances, a withdrawal of a petition prior to the commencement of a hearing on the merits could be deemed to be with prejudice . . . .” (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 865.

When a petitioner has engaged in the type of gamesmanship that “constitutes procedural chicanery, that is, it offends the orderly and due administration of justice and is intended to avoid the consequences of [a previous] waiver,” a court may condition a withdrawal to be with prejudice without abusing its discretion. (Internal quotation marks omitted.) *Marra* v. *Commissioner of Correction*, supra, 174 Conn. App. 457. Procedural chicanery, however, is not an absolute requirement for conditioning that a withdrawal be with prejudice; other abuses of the right to voluntarily withdraw may justify such a decision. Indeed, this court has recognized a variety of considerations that may support a habeas court’s decision to require that a withdrawal be with prejudice, including the temporal proximity of the withdrawal to trial, the length of time that the case had been pending, the number of past continuances, the time and effort spent by the respondent and court staff, any special expenses incurred in preparation for trial, the initiation of any evidentiary proceedings, and the petitioner’s voluntary participation in the decision to withdraw. See, e.g., id., 447–49, 454, 458 (habeas court acted within its discretion when it conditioned withdrawal as being with prejudice when petition was withdrawn day before start of trial, petition had been pending for approximately two and one-half years and trial had been continued three times, court staff already took time to meet with attorneys and mark exhibits, court staff and respondent were ready for trial, and petitioner personally participated in decision to withdraw); *Mozell* v. *Commissioner of Correction*, 147

Conn. App. 748, 759–60, 83 A.3d 1174 (habeas court acted within its discretion in requiring withdrawal of count in habeas petition to be with prejudice when petition at issue was petitioner's third, action had been pending approximately two and one-half years, subpoenaed witnesses were in court and ready to proceed, expenses had been incurred for setting up videoconferencing for out-of-state witness, and several exhibits had already been admitted in full into evidence), cert. denied, 311 Conn. 928, 86 A.3d 1057 (2014); see also, e.g., *Smith* v. *Commissioner of Correction*, supra, 187 Conn. App. 865–68 (affirming that factors considered in *Marra* and *Mozell* were properly considered and that court acted within its discretion when it required withdrawal of petition to be with prejudice).

In the present case, the petitioner was convicted of the underlying offense in 2004. In August, 2007, the petitioner filed his first habeas petition, which he withdrew on June 26, 2013, prior to trial. Less than one year later, he filed a second petition on March 27, 2014, which he also withdrew prior to trial on April 10, 2015. The petitioner then filed the operative petition on November 16, 2016. On May 25, 2023, prior to the commencement of trial in the present matter, the petitioner withdrew three of the four counts in the petition and a portion of another count. The court made the petitioner fully aware that, if he withdrew any count of the operative petition, the court was going to grant his motion with prejudice. The court thereafter canvassed[3] the petitioner with respect to his intention to withdraw certain counts and claims in the operative petition, and, with the exception of his actual innocence claim, accepted the withdrawal with prejudice. In doing so, the court noted the age of the petitioner's conviction, the age of the pending petition, and the fact that the petitioner

---

[3] On appeal, the petitioner does not challenge the propriety of the habeas court's canvass of him.

had filed two prior petitions and withdrew them entirely on the eve of trial.

Accordingly, we conclude that the habeas court acted within its discretion in requiring the petitioner's withdrawal of certain claims to be with prejudice.

### III

The petitioner's final claim on appeal is that the habeas court improperly concluded that he had failed to prove that Keeney rendered ineffective assistance at the second criminal trial. Specifically, the petitioner asserts that Keeney performed deficiently by failing to properly investigate and prepare the petitioner's alibi defense. The respondent counters that the record does not support that either Keeney's investigation or preparation of the alibi defense fell below an objective standard of reasonableness. We agree with the respondent.

We first set forth our well settled standard of review and the following legal principles. "A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington,* [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because

both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . .

"On appeal, [a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous, whether those facts constituted a violation of the petitioner's rights [to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"Because our resolution of the present case turns on our review of the performance prong, some additional explication of that prong is necessary. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable. . . . Nevertheless, [j]udicial scrutiny of counsel's performance *must be highly deferential.* It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court *must indulge a strong presumption that counsel's conduct falls within the wide range*

*of reasonable professional assistance*; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action *might* be considered sound trial strategy. . . .

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"Inasmuch as [c]onstitutionally adequate assistance of counsel includes competent pretrial investigation . . . [e]ffective assistance of counsel imposes an obligation [on] the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case. . . .

"Nevertheless, strategic choices made after thorough investigation of law and facts relevant to plausible options *are virtually unchallengeable*; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. . . .

"The reasonableness of counsel's actions may be determined or substantially influenced by the [petitioner's] own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic

choices made by the [petitioner] and on information supplied by the [petitioner]. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. . . .

"Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation *and without adequate explanation*, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . Furthermore, [t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. . . .

"[O]ur habeas corpus jurisprudence reveals several scenarios in which courts will not second-guess defense counsel's decision not to investigate or call certain witnesses or to investigate potential defenses [including] when . . . counsel learns of the substance of the witness' testimony and determines that calling that witness is unnecessary or potentially harmful to the case. . . .

"[T]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the

same way. . . . The United States Supreme Court has cautioned that a reviewing court, in considering whether an attorney's performance fell below a constitutionally acceptable level of competence pursuant to the standards set forth herein, must properly apply the strong presumption of competence that *Strickland* mandates and is *required* not simply to give [trial counsel] the benefit of the doubt . . . but *to affirmatively entertain the range of possible reasons* [*that*] *counsel may have had for proceeding as* [*he*] *did*. . . . This strong presumption of professional competence extends to counsel's investigative efforts . . . as well as to choices made by counsel regarding what defense strategy to pursue." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *Jordan* v. *Commissioner of Correction*, 197 Conn. App. 822, 829–34, 234 A.3d 78 (2020), aff'd, 341 Conn. 279, 267 A.3d 120 (2021).

"It is [also] well established that the burden of establishing grounds for relief in a habeas corpus proceeding rest[s] with the petitioner. . . . The petitioner, as the plaintiff in a habeas corpus proceeding, bears a heavy burden of proof." (Internal quotation marks omitted.) *Cator* v. *Commissioner of Correction*, 229 Conn. App. 393, 420, 327 A.3d 1028 (2024), cert. denied, 351 Conn. 919, 333 A.3d 105 (2025). "[I]t is well established that a petitioner in a habeas proceeding cannot rely on mere conjecture or speculation . . . but must instead offer demonstrable evidence in support of his claim." (Internal quotation marks omitted.) *Charles* v. *Commissioner of Correction*, 206 Conn. App. 341, 358, 261 A.3d 184, cert. denied, 339 Conn. 919, 262 A.3d 139 (2021).

It is equally well established that "the [habeas] court, as the trier of fact, [is] the sole arbiter of facts and credibility and [is] free to believe in whole or in part the [witness'] testimony. . . . The court also [is] free to draw reasonable inferences from that testimony when

rendering judgment." (Internal quotation marks omitted.) *Person* v. *Commissioner of Correction*, 146 Conn. App. 477, 484, 78 A.3d 213, cert. denied, 310 Conn. 960, 82 A.3d 627 (2013).

The following additional facts are necessary for the resolution of this claim. Mirsky did not pursue an alibi defense at the petitioner's first trial. At the second trial, however, Keeney presented an alibi defense. Specifically, Keeney presented evidence that, on the evening of December 31, 2002, into the early hours of January 1, 2003, the petitioner was at a New Haven nightclub. In support thereof, the petitioner testified that his friend, Tucker, had worked at the nightclub, providing security. The petitioner further testified that he arrived at the nightclub at approximately 9 p.m. and left with Tucker when the nightclub closed at approximately 2:30 to 3 a.m. on the morning of January 1, 2003. The petitioner described the nightclub as "one big room where you dance at." He further described the nightclub as "packed" and estimated that there were more than 100 people there that night.

Keeney also called Tucker to testify in support of the petitioner's alibi defense. Tucker testified that he had known the petitioner since they were children. He further testified that he worked at the nightclub as a bouncer on the evening of December 31, 2002, into the morning of January 1, 2003. According to Tucker, the petitioner arrived at the nightclub that night at approximately 10:30 p.m. and left with Tucker at about 3:30 a.m. Tucker described the nightclub as a two-story building, the first floor consisting of a lobby with rooms to the right and left with a bar in each room, and the second floor consisting of one big dance room with a bar. Tucker further testified that the nightclub could hold approximately 350 people, but he had previously seen as many as 600 people in the club.

Keeney next presented the testimony of Austin, who was also providing security at the nightclub on the night of December 31, 2002, into the morning of January 1, 2003. She testified that she had seen the petitioner at the nightclub but could not remember if she saw him that night. She described the nightclub as a two-story building with the first floor having a "VIP room" and a dance floor, and a second floor. Austin estimated that there were approximately 400 people in the club that night.

On appeal, the petitioner asserts that Keeney's investigation and preparation of the alibi defense fell below an objective standard of reasonableness. Specifically, the petitioner argues that, assuming Keeney had visited the nightclub and had interviewed Tucker and Austin, he should have identified any divergence between the petitioner's anticipated testimony and that of Tucker and Austin and better prepared the petitioner to address any such discrepancies at trial or advised him not to testify. Alternatively, he argues that, if Keeney had neglected to visit the nightclub or interview and prepare Tucker and Austin to testify, those failures alone would constitute deficient performance. In support thereof, the petitioner relies on Keeney's inability to recall certain actions he had taken in connection with the investigation and preparation of the defense and the divergence of accounts regarding the nightclub, as well as the petitioner's own testimony that he never discussed his alibi with Keeney and was not prepared to testify with respect to the alibi. We are not persuaded.

At the habeas trial, the petitioner testified that he had never discussed an alibi defense with Keeney and told Keeney that he did not want to testify at the second trial. The habeas court, however, found that the petitioner had "zero credibility on this issue." With respect to the petitioner's allegation that Keeney failed to adequately present his alibi defense, the court found that

the claim failed as a matter of law because the petitioner did not call Tucker and/or Austin to testify at the habeas trial.

Keeney testified that he recalled that the petitioner had claimed he was at a New Haven nightclub on the night of the shooting. Although Keeney did not recall if he had visited the nightclub, he testified that doing so "seem[ed] to [him] what [he] would do." Keeney further testified that he did not remember the names of the alibi witnesses or if they had testified at the second trial, but that it was his general practice to prepare alibi witnesses. Because it was Keeney's general practice to prepare and investigate alibi defenses, and there was no credible testimony to the contrary, it was reasonable for the court to infer that Keeney had adequately prepared the alibi defense.[4]

Accordingly, we conclude that the habeas court properly determined that the petitioner failed to demonstrate that Keeney performed deficiently.[5]

[4] Although the habeas court did not make a finding that Keeney had interviewed the alibi witnesses, the record supported Keeney's testimony that it was his practice to do so. During Keeney's direct examination of Austin at the second criminal trial, Austin testified that she did not remember if she had seen the petitioner at the club on the night in question. Keeney then asked Austin, "[t]*hree times you've been interviewed in this matter*, and each time you've said it was that night, you remember it was that night because it was New Year's Eve . . . . Is there something that's caused you to change you[r] opinion; did some activity occur to you in the last day or two relating to your position with your security company that's causing you now to have a lapse of memory?" (Emphasis added.) Austin responded: "When *originally I was sent to you to speak with you*, I was told you just wanted me to identify him to [see] if I knew him, if I seen his face before at the club, then over the [past] few days I've been subpoenaed to come here, and I was told I would have a warrant for my arrest if I didn't show up." (Emphasis added.)

[5] Although the habeas court did not address the prejudice prong of the *Strickland* test, we have "repeatedly explained that a court may resolve ineffective assistance of counsel claims on either the performance prong or the prejudice prong" of *Strickland*. *Williams* v. *Commissioner of Correction*, 223 Conn. App. 745, 762, 310 A.3d 381, cert. denied, 349 Conn. 901, 312 A.3d 586 (2024). Accordingly, "[i]n light of our determination that the

The appeal is dismissed.

In this opinion the other judges concurred.

———————————

petitioner failed to establish that [counsel's] performance was deficient, we need not address the prejudice prong." *Quint* v. *Commissioner of Correction*, 211 Conn. App. 27, 36 n.7, 271 A.3d 681, cert. denied, 343 Conn. 922, 275 A.3d 211 (2022).